497 So.2d 1089 (1986)
Michael Herbert WEAVER
v.
STATE of Mississippi.
No. 55901.
Supreme Court of Mississippi.
September 24, 1986.
Rehearing Denied December 10, 1986.
*1090 Charles R. Brett, Tupelo, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by DeWitt Allred, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before HAWKINS, P.J., and ROBERTSON and GRIFFIN, JJ.
ROBERTSON, Justice, for the Court:

I.
This arson case finds the Defendant mounting numerous challenges to the fairness of his trial and conviction and his ten year recidivism sentence. Though the prosecution turns largely upon the credibility of an accomplice-turned-state's-evidence, we find the evidence more than adequate to place the jury's verdict beyond our authority to disturb. Moreover, we have reviewed with care Defendant's several assertions of procedural error and find none with merit. We affirm.

II.
Around 3:00 a.m. on November 15, 1982, the Hi-Lo Dollar Store in Maben, Mississippi, burned. Investigation revealed that an accelerant had been used to start the fire. In addition, the front door lock had been torn out of its casing and a drug locker in the pharmacy section had been broken into. Merchandise, including drugs from the pharmacy and jewelry and cigarettes from the dollar store, were missing.
Several days after the fire, Oktibbeha County law enforcement authorities arrested an individual named Ron Vanderviss on unrelated charges. On December 8, 1982, Vanderviss gave the sheriff a detailed statement admitting that he and Michael Herbert Weaver, Defendant below and Appellant here, had burned the Hi-Lo Dollar Store as hired arsonists. Several days later, Vanderviss took the sheriff to various places in and around Maben where the events, as indicated in his statement, had occurred. Prior to trial, the prosecution made a deal with Vanderviss: In return for his testimony at the trial of Mike Weaver, the State would not try Vanderviss as a habitual criminal, he would receive help for his drug addiction while incarcerated and he would not be incarcerated with Weaver.
On April 17, 1984, Weaver was formally charged with the arson of the Hi-Lo Dollar Store in an indictment returned by the Oktibbeha County Grand Jury. By reason of two prior felony convictions, Weaver was further charged as a recidivist within the meaning and contemplation of Miss. Code Ann. § 99-19-81 (Supp. 1985). The case was called for trial on April 30, 1984.
The building that burned was owned by Louis Williams who rented a part of it to his son, Tom Williams, who operated the Hi-Lo Dollar Store. The remainder was rented to Andy Andrews who operated the pharmacy. Vanderviss' testimony at trial was that Weaver had been engaged to fire the building at the behest of the proprietors of the store. Weaver obtained the keys to the store and the burglar alarm from Tommy Williams, a cousin of the operator of the Hi-Lo Dollar Store. The purpose of the arson was to allow the proprietors to collect the insurance. Vanderviss and Weaver were supposed to make it appear that the fire was set to cover up a burglary. In this regard, a part of the consideration Vanderviss and Weaver were *1091 to receive for their arsonist services was anything they could carry away from the store, especially drugs.
Vanderviss testified that the arson plan was originally scheduled to be consummated on the night of November 13, 1982. Vanderviss, Weaver and Weaver's girlfriend, Ruth McAlpin, traveled to Maben in Weaver's car. McAlpin was to have the car parked in a certain place for the getaway. Vanderviss testified that he and Weaver entered the store with the key, disarmed the burglar alarm, stashed some jugs of gasoline, forced open the drug cabinet, and took 800 to 1,000 cartons of cigarettes plus some watches and drugs. Before burning the store Vanderviss and Weaver decided to check and make sure McAlpin was parked where she was supposed to be. Vanderviss went to look for McAlpin and was unable to find her or the car she was driving.
Upon returning to the store, Vanderviss and Weaver decided not to burn the store that night because they did not know where McAlpin was. Vanderviss testified that they then loaded the goods that they had taken into a blue dump truck parked behind a Big Star Store across the street from the Hi-Lo Dollar Store. They drove the truck to where McAlpin was to have parked and stashed the goods. Afterwards they drove to a home in the country where Weaver obtained a four-wheel drive vehicle and told Vanderviss to follow him in the dump truck. The dump truck ran out of gas and they abandoned it on the side of the road. Once they got to town, the four-wheel drive ran out of gas and Weaver called someone who gave them a ride to a bar known locally as the Bloody Bucket, where Weaver picked up a small yellow car that belonged to one of his cousins.
Vanderviss further testified that he and Weaver then drove back into Maben and found McAlpin at a convenience store. McAlpin told them that she had ran off in a ditch the night before. They put gasoline in the four-wheel drive and used it to pull the car that McAlpin had driven from the ditch. Vanderviss then took Weaver's car, returned to the place where they had stashed the goods, loaded them into Weaver's car and drove to McAlpin's home in Houston, Mississippi.
Vanderviss then testified that he and Weaver returned to Maben that night, which was Sunday night, and burned the Hi-Lo Dollar Store.
The prosecution produced fourteen other witnesses to corroborate the testimony of Vanderviss. The defense introduced two witnesses, in addition to calling Vanderviss as a hostile witness, for its case-in-chief. One of these witnesses for the defense testified that she, McAlpin and Weaver were together at McAlpin's home on the Sunday night of the incident. The other witness testified that Vanderviss had told him that an individual named Frank Hemphill had instructed Vanderviss to testify as he did against Weaver so that he (Vanderviss) might get out of jail and stay out of the penitentiary.
After a four day trial the jury returned a verdict that Weaver was guilty as charged. Thereafter, Weaver was sentenced to serve a term of ten years in the custody of the Mississippi Department of Corrections without eligibility for probation or parole. A motion for a new trial was heard and overruled on June 5, 1984. Weaver now presents this appeal.

III.
The criminal code of this state contains seven separate offenses falling within the generic category of arson. Miss. Code Ann. §§ 97-17-1, et seq. (1972). While there is much overlap between them, each of these offenses contains at least one factual element distinguishing it from the others. Differing penalties are also prescribed, no doubt reflecting legislative policy judgments that some arsons are more serious than others, their perpetrators more deserving of severe punishment than others.
The present indictment charges simply that Weaver
did unlawfully, willfully and feloniously and maliciously set fire to and burn a *1092 building commonly known and called Hi-Lo Dollar Store.
The Circuit Court considered  and the State argues here  that this indictment charges an offense under our second decree arson statute, Miss. Code Ann. § 97-17-5 (1972), which reads as follows:
Any person who willfully and maliciously sets fire to or burns or causes to be burned, or who aids, counsels or procures the burning of any building or structure of whatsoever class or character, whether the property of himself or of another, not included or described in Section 97-17-1 or Section 97-17-3, shall be guilty of arson in the second degree, and upon conviction thereof, be sentenced to the penitentiary for not less than one nor more than ten years.
Weaver argues that a combined reference to the proof and the indictment compels consideration of this case solely under the insured property arson statute, Miss. Code Ann. § 97-17-11 (1972), which reads as follows:
Any person who willfully and with intent to injure or defraud the insurer sets fire to or burns or attempts so to do or who causes to be burned or who aids, counsels or procures the burning of any building, structure or personal property of whatsoever class or character, whether the property of himself or of another, which shall at the time be insured by any person, company or corporation against loss or damage by fire, shall be guilty of a felony and without conviction thereof, be sentenced to the penitentiary for not less than one nor more than five years.
The principal practical consequence of the point is that, if Weaver is correct, his maximum sentence would be five years imprisonment instead of ten.
Our law regarding this point is clear. Where we have two or more statutes covering a given course of conduct, the prosecution may choose to proceed against the accused under either, so long as the accused is given fair notice of that with which he is charged. Cumbest v. State, 456 So.2d 209, 222-23 (Miss. 1984); Brooks v. State, 236 So.2d 751, 753 (Miss. 1970); see Rule 2.05, Unif.Crim.R.Cir.Ct.Prac. On the other hand, where, from a fair reading of the indictment in the light of the several statutes in our criminal code, the accused cannot identify with reasonable certainty the statute the prosecution has elected to proceed under, the accused upon conviction will be liable for punishment only under the lesser statute. Grillis v. State, 196 Miss. 576, 586, 17 So.2d 525, 527 (1944).
The indictment at issue does not designate a specific statute. We have held, however, that this is not fatal where from the language of the indictment the accused may fairly ascertain under what statute he has been charged. Harbin v. State, 478 So.2d 796, 799 (Miss. 1985); Harden v. State, 465 So.2d 321, 324 (Miss. 1985); Henderson v. State, 445 So.2d 1364, 1367-68 (Miss. 1984); Dalgo v. State, 435 So.2d 628, 630 (Miss. 1983); Rule 2.05, Miss.Unif. Crim.R.Cir.Ct.P.
The charging language of the instant indictment alleges that Weaver "did unlawfully, willfully and feloniously and maliciously set fire to and burn" the Hi-Lo Dollar Store. This language is in substance the same as that in the second degree arson statute, Section 97-17-5, the language of which, to repeat, is
Any person who willfully and maliciously sets fire to or burns ... any building or structure... .
We doubt that one would need a lawyer to take the language of the present indictment and, upon comparing it with the several arson statutes in our criminal code, ascertain that Weaver had been charged under Section 97-17-5.
The insured property arson statute includes as an element of the offense there created "intent to injure or defraud the insurer." See Brower v. State, 217 Miss. 425, 64 So.2d 576 (1953). To be sure, the record is replete with suggestions that the persons who procured the services of Weaver and Vanderviss contemplated defrauding an insurer. Beyond this, we are certainly not prepared to say that the person *1093 who actually performs the arson services in such a scheme should automatically be acquitted under the insured property statute. That this latter statute might also have covered and made unlawful the conduct of Weaver does not preclude his being charge under the second degree arson statute. We hold that the indictment fairly charges Weaver with the violation of Miss. Code Ann. § 97-17-5 (1972). As will be further mentioned below in connection with Section VII, the evidence, resolving the conflicts in a light reasonably favorable to the State, was more than sufficient to establish that Weaver was guilty of the violation of Section 97-17-5.

IV.
In the alternative, Weaver argues that, if the prosecution was proceeding under Section 97-17-5, the introduction of evidence regarding insurance constituted prejudicial error necessitating reversal.
To be sure, our law on occasion forbids evidence regarding insurance where such is not deemed relevant to the issues being tried. Cf. Rule 411, Miss.R.Ev.; Mid-Continent Aircraft Corp. v. Whitehead, 357 So.2d 122, 124 (Miss. 1978). It is not clear, however, how that premise might apply here where, as indicated above, the insured property arson statute has been regarded at least by our legislature as being a less serious offense than second degree arson.
The sufficient answer to Weaver's argument is that he was the party to first elicit testimony about insurance, nor did he object timely when the prosecution entered the opened door. After defense counsel had questioned several prosecution witnesses about insurance on cross-examination, the district attorney asked one of his witnesses, Andy Andrews, on direct examination whether he had any insurance on his inventory. The prosecution then put on insurance agent Bill Polk, whose agency had written a policy on the Hi-Lo Dollar Store and questioned him in regard to insurance on the store. Defense counsel did not object until Polk was asked whether the claim on the policy had been paid. This objection was sustained.
If the State's presentation of testimony regarding insurance was error, it was invited error. See Wiley v. State, 465 So.2d 318, 320 (Miss. 1985); Tucker v. State, 403 So.2d 1271, 1273 (Miss. 1981). Beyond this Weaver made no objection to such testimony until after several witnesses had testified. See Baker v. State, 327 So.2d 288, 291-93 (Miss. 1976). He may not complain on appeal regarding testimony he originally elicited and to which he thereafter made no timely objection. The assignment of error is denied.

V.
During redirect examination of Ron Vanderviss, the Assistant District Attorney asked: "When you were at Ruth's house after the burglary, when was the last time  " Defense counsel objected to the use of the word "burglary" asserting that Vanderviss' testimony had not indicated that a burglary had occurred. The Circuit Court overruled this objection, stating: "There was a burglary in his testimony in Maben, Mississippi. There's been a lot of testimony about it." The next day, referring to his comment about the burglary on the previous day, the Court admonished the jury that "all objections and comments by any of the attorneys and rulings and comments on the objections by the Court are not evidence and should not be so considered by you as evidence." All of the jurors swore that they would heed the court's admonition.
Weaver argues that the Circuit Court's comment constitutes reversible error and that it was so highly prejudicial that no instruction could cure it.
Whether the Circuit Court was technically correct in its subsequent ruling that use of the word "burglary" by the prosecuting attorney was improper is not before us. Suffice it to say, as indicated in Section II above, that by this point in time there was abundant evidence that Vanderviss and Weaver may have committed a burglary. The fragmented question of the prosecuting *1094 attorney and the subsequent comments of the Circuit Court introduced no matter suggesting culpability of the accused beyond the scope of what was already well before the jury.
Without doubt there have been within our experience occasions where a prosecuting attorney made before the jury an improper remark and where the trial judge's follow-up comments exacerbated the matter. See Caldwell v. State, 443 So.2d 806, 816 (Miss. 1983) (dissenting opinion), reversed in relevant part 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985). In such cases where the prejudicial effect of what the jury heard was such that no amount of subsequent admonition from the trial judge would be likely to eradicate from the jury's mind the prejudicial effect, we reverse, although such occasions are rare. See Tudor v. State, 299 So.2d 682, 685-86 (Miss. 1974); McDonald v. State, 285 So.2d 177, 179-80 (Miss. 1973).
Absent such unusual circumstances, we proceed ordinarily on the assumption that jurors will act in good faith and will indeed follow the instructions of the court. In this setting we have allowed subsequent admonition to cure a trial judge's improper remark. Johnson v. State, 475 So.2d 1136, 1141-42 (Miss. 1985). We consider that there must be a presumption  albeit a rebuttable one  that jurors follow such instructions when given by the trial judge. Johnson v. State, 475 So.2d at 1142; Payne v. State, 462 So.2d 902, 904 (Miss. 1984); Carter v. State, 450 So.2d 67, 69 (Miss. 1984).
Weaver argues that the trial judge's admonition to the jury was further improper for the reason that it was said to have been a comment on the weight of the evidence. The traditional view in this state that a trial judge should not comment upon the weight of the evidence has by no means been discarded, see Thompson v. State, 468 So.2d 852, 853-54 (Miss. 1985); Roberson v. State, 185 So.2d 667, 670 (Miss. 1966), although it is not a prohibition enforced strictly and mechanically as perhaps was once the case. See Blanks v. State, 451 So.2d 775, 778 (Miss. 1984); Haralson v. State, 314 So.2d 722, 724 (Miss. 1975). The comment complained of here was within the scope of those the trial judge was privileged to make. In any event, his subsequent admonition to the jury that his comments regarding a "burglary" should be disregarded was more than sufficient to cure the prejudicial effect, if any.

VI.
Weaver next complains of the Circuit Court's refusal to order a mistrial when on the third day of trial it became apparent that one of the jurors had an impaired hearing capacity. The point is a direct outgrowth of the Circuit Court's admonition that the jurors should disregard the statements made the day before regarding a "burglary".
When the court asked the jurors if they would follow this admonition, all but one, John Howard Robinson, responded in the affirmative. Upon further inquiry it developed that Juror Robinson's failure to respond was attributable to his hearing impairment. The matter was fully developed at the time and upon a post-trial motion. Suffice it to say that the record reflects that Robinson was an 87 year old pastor who did indeed have a hearing problem. The Circuit Court considered the matter carefully and found in the end that there was no reason to believe that Robinson had missed any of the testimony at trial nor, as a result of his hearing problem, had he failed to comprehend the issues involved and the import of his verdict.
While we have no cases on the point, it follows as a matter of common sense that a person who is deaf should not sit on a jury. In a criminal prosecution, having a deaf person on a jury would constitute a denial of the accused's rights to due process of law and to trial before a fair and impartial jury. U.S. Const. Amdts. V, VI and XIV; Miss. Const. Art. 3 §§ 14, 26 (1890). See State v. Miller, 722 P.2d 1131, 1133, (Kan. Ct. App., 1986); Commonwealth v. Brown, 231 Pa.Super. 431, 332 A.2d 828, 831 (1974).
*1095 Here the Circuit Court interrogated Robinson when the question of his hearing first arose at trial and appears to have been satisfied that Robinson could hear and understand the proceedings. In addition, in connection with the hearing of the motion for a new trial, the Circuit Court again listened to Robinson testify and reached the same conclusion. We consider the Circuit Court was well within its discretion in its handling of the matter and find no error in its denial of the motion for mistrial and the subsequent motion for a new trial made on this ground.

VII.
Weaver contends that the Circuit Court erred in giving the following instruction:
S-3
The court instructed the Jury that under the laws of the State of Mississippi, an individual who aids, assists, and encourages the commission of a crime is deemed and considered a principal in the commission of said crime.
Weaver argues that the testimony did not indicate that he was in Maben on Sunday night and, at best, if he attempted to burn the Hi-Lo Dollar Store on Saturday night, he would be guilty of fourth degree arson under Miss. Code Ann. § 97-17-9 (1972). Therefore, the jury instruction was improper.
When a jury instruction correctly states the law, and there is evidence to justify it, granting the instruction is not error. Jackson v. State, 420 So.2d 1045, 1048 (Miss. 1982). In the burglary context, this Court has held that a similar instruction to the one in the case at bar is proper if the instruction is supported by the evidence. Franklin v. State, 460 So.2d 104, 106 (Miss. 1984); Bass v. State, 231 So.2d 495, 496 (Miss. 1970); see also Anderson v. State, 397 So.2d 81, 84 (Miss. 1981) (robbery). In McBroom v. State, 217 Miss. 338, 64 So.2d 144 (1953), the defendant was convicted of grand larceny and the trial judge had given an instruction conceptually identical[1] to the instruction in the case at bar. This Court reversed the conviction based on the grounds that although the instruction stated correctly a principle of law, it was improper because there was no evidence to show that the defendant aided or abetted in the crime charged. 217 Miss. at 340, 64 So.2d at 144.
Furthermore, Miss. Code Ann. § 97-17-3 (1972) provides that an accessory to a felony shall be deemed and considered a principal. See Malone v. State, 486 So.2d 360, 363-64 (Miss. 1986); Fairchild v. State, 459 So.2d 793, 798 (Miss. 1984). As far as the evidence is concerned, Vanderviss testified that Weaver discussed the plan to burn the Hi-Lo Dollar Store with him. In addition, he testified extensively as to the acts he and Weaver committed in carrying out the burning of the Hi-Lo Dollar Store. Specifically, Vanderviss testified that Weaver went back to Maben with him on the night of November 14-15, 1982, and that together they set fire to the building. In light of this evidence, this Court must keep in mind that the jury may accept testimony of a witness in part and reject it in part. Gathright v. State, 380 So.2d 1276, 1278 (Miss. 1980). Further, it is the jury's prerogative to accept testimony that it deems to be more trustworthy and to reject testimony which it deems less so. Robinson v. State, 418 So.2d 749, 751 (Miss. 1982).
The assignment of error is denied.

VIII.
Weaver argues that the verdict was contrary to the overwhelming weight of the evidence and that it evinces bias, passion and prejudice on the part of the jury. In this context we note that Weaver presented evidence at trial which, if it had been believed by the jury, could well have resulted in a verdict of not guilty. The *1096 verdict of guilty was no doubt in substantial part the product of the testimony of the accomplice, Ron Vanderviss, a person whose circumstances render his testimony such that it should be viewed with caution. See Holmes v. State, 481 So.2d 319, 322-23 (Miss. 1985). In the context of the present assignment of error, however, it is sufficient to note that we have held on numerous occasions that the uncorroborated testimony of an accomplice, where not wholly improbable or otherwise incredible, may be sufficient to support a verdict of guilty of a criminal offense. Mason v. State, 429 So.2d 569, 571 (Miss. 1983); Jones v. State, 381 So.2d 983, 988 (Miss. 1980); Wilson v. State, 234 So.2d 303, 311 (Miss. 1970).
Without extended discussion we regard that the jury's verdict was within the evidence and that the jury's verdict is beyond our authority to disturb. See Winters v. State, 473 So.2d 452, 461 (Miss. 1985); Pace v. State, 473 So.2d 167, 169 (Miss. 1985); May v. State, 460 So.2d 778, 780-81 (Miss. 1984); Pearson v. State, 428 So.2d 1361, 1364 (Miss. 1983).
The assignment of error is denied.

IX.
Finally, Weaver challenges the authority of the Circuit Court to sentence him as an habitual offender under Miss. Code Ann. § 99-19-81 (Supp. 1985). The question, however, is whether the defendant has been convicted twice previously of felonies upon separate charges arising out of separate incidents at separate times.[2]
For the factual predicate for recidivism sentencing in this case, the prosecution relied upon a 1973 burglary conviction Weaver had suffered in the Circuit Court of Calhoun County, Mississippi, and a 1981 Oklahoma conviction of motor vehicle larceny. Weaver's argument is that the Calhoun County conviction resulted in a suspended sentence. This, in Weaver's view, renders the Calhoun County conviction ineligible for consideration under Section 99-19-81. Weaver misreads the statute.
The statute requires two separate convictions followed by sentences "to separate terms of one (1) year or more... ." The record reflects that the Calhoun County burglary conviction netted Weaver a five year sentence and that the Oklahoma motor vehicle larceny conviction netted him a three year sentence. That the Calhoun County burglary sentence may have been suspended profits Weaver nothing. In Jackson v. State, 381 So.2d 1040, 1042 (Miss. 1980) we disposed of this point, stating
We reject this argument, because we think the statutory intention is satisfied where, as here, the accused has been twice previously adjudged guilty of distinct felonies upon which sentences of one year or more have been pronounced, irrespective of subsequent probation or suspension of the sentences.
The assignment of error is denied.
CONVICTION OF ARSON AND SENTENCE OF TEN (10) YEARS IMPRISONMENT WITHOUT PROBATION OR PAROLE AFFIRMED.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and DAN M. LEE, PRATHER, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.
NOTES
[1] The instruction read: "The court instructs the Jury for the State that any person aiding, abetting, counseling, or procuring the commission of a felony is guilty as a principal." 217 Miss. at 340, 64 So.2d at 144.
[2] On a prior appeal, Weaver secured reversal of an unrelated burglary conviction originating from events said to have occurred on November 10, 1982. Weaver v. State, 481 So.2d 832 (Miss. 1985).